May it please the court. I'm Paul Lundberg. I represent Timothy Vanderberg. We're here because the district court abused its narrow discretion and dismissed Mr. Vanderberg's case on summary judgment because counsel did not use the word causation in disclosing the treating physician's expected testimony. At the outset here, the appellant concedes that the court was within its discretion to exclude any testimony from the non-treating physician, Dr. Verma, for whom no records had been provided. Excluding him does not end up dismissing the case. Excluding the causation testimony of the treating physician does. The cases say that while discretion exists in this situation, it narrows where a discovery sanction is imposed that results in dismissal of the action. A number of Eighth Circuit authorities indicate that a sanction resulting in dismissal requires a finding of willfulness or bad faith. There was no such finding here by the district court. The district court said it didn't find our reasons for not saying causation not to be persuasive. There was no finding of willfulness or bad faith. The defendant does not argue willfulness or bad faith. We would point to the case of Heartland Bank cited in our briefs where this court remanded the case for consideration of a sanction less than dismissal even though the plaintiff and its counsel had engaged in what the court described as clearly obstructionist conduct. The treating physician was Dr. Petschke? Petschke, yes. And Dr. Verma was the IME physician. So what was included in in discovery or anything amongst Dr. Petschke's information that went to causation? Well, his medical records were disclosed which included three surgical dictations, two shoulders and a knee, where he ascribed the injuries to the incident at Petco that's alleged in the complaint. Now there's an argument, well that's just what Mr. Vandenberg told him, but if you read those dictations by the doctor he does not qualify them in any manner. He says the patient was injured on this incident and and perhaps more importantly in his records was a letter he authored April 26, 2016 where he expressed a causation opinion on Mr. Vandenberg's left knee injury. This opinion appears to have been, even though it was cited in the court's decision, it seems to have been ignored in terms of there's a causation opinion that was disclosed in the medical records. The district court, in my view, made a curious... Were they disclosed as expert opinion? Even if you were able to rely on Dr. Petchy's operative notes for causation, wouldn't they still be excluded as undisclosed expert opinion? That's where we get into the, I think, dichotomy between treating physicians and retained experts. And under the rule we concede that treating physicians, if they're going to express expert opinion, should be disclosed. Well, I would also submit that the only testimony that treating physicians give is expert in nature. They're not called as lay patient and proceed with their diagnosis, treatment, etc. based on that history. We did not serve a paper that says Dr. Petchy will testify as an expert on causation. And I guess the issue under Rule 37 is, was that omission substantially justified or harmless, so as not to require a sanction, given the extensive disclosures that were made. We also answered an interrogatory, asking, tell us all physicians who have treated the plaintiff for the injuries alleged in the complaint. And he was so disclosed. The district court's view of that was, well, that was not an interrogatory or discovery request requesting causation evidence. So the district court downplayed that disclosure. I guess I don't know what a causation-specific interrogatory looks like, because I don't think I've ever seen one. The interrogatory asked for physicians who have treated him for what we allege in the complaint. And he was so disclosed, along with his medical records. A month before the discovery deadline, Petco asked if we had any experts. We sent a letter saying the treating physicians are going to testify as to diagnosis, treatment, prognosis, future medical care, and permanent impairment. We argue in our brief that none of that testimony is even admissible until the causal connection to the injury alleged in the complaint is established. And I guess, in hindsight, it should have been more the view, doesn't it kind of go without saying, that he has to testify to medical causation before he can even testify to all these other things that we say he's going to testify to. We cited in our reply brief the district court case Judge Pratt in the Southern District of Iowa had, Anderson v. Bristol-Link, where he had a very similar situation in front of him, where the defendants were attempting to exclude both testimony of a non-treating physician, for whom no records were supplied, like Dr. Verma here, and causation testimony of the treating physician, for whom records and interrogatory disclosures had been made. Judge Pratt found that the appropriate lesser sanction, other than dismissal, would be to exclude the testimony of the non-treating physician, for whom no records had been supplied, and permit the treating physician to testify based on his treatment and his medical records, period. In other words, as I read that case, if that was the decision here, we couldn't use Dr. Pesci for hypothetical questions. We couldn't give him Dr. Verma's opinions and ask him to, you know, agree with those and use them to buttress his opinion. His testimony would be based on his treatment and his medical records. We've cited, admittedly, district court cases and one Seventh Circuit case that says if the causation opinions are based on his treatment of the patient, then they're acceptable. The other error we believe the district court made here was putting aside whether or not Dr. Pesci can testify to causation. Was there not sufficient medical evidence in the summary judgment record, based on a summary judgment standard, to preclude summary judgment on medical causation, given the fact that the medical records with these three surgical dictations were in the record where Dr. Pesci says this patient was injured at Petco three times for three different surgeries and included his letter where he expressed a causation opinion on Mr. Vandenberg's left knee. If those records are viewed in the light most favorable to Mr. Vandenberg, which the cases say essentially means adopting the plainest version of the facts with regard to those records. This argument assumes you win on the on the sanction motion, right? No, I think it assumes we lose on the sanction motion. But how does that come into evidence? Well, if Dr. Pesci is excluded, how does it come into evidence? I believe he was only excluded with regard to causation testimony. Do you concede you have to have some evidence of causation to survive? Well, yes I do, and what we're arguing is if you look at those surgical dictations and... But if his testimony is reliant on that, can you? Well, I think it was opinion testimony as to causation. I don't think there was any ruling that he could not talk about his medical records. These are, you know, lay the foundation for his medical records. These are my medical records. Once he lays that foundation, the medical records are in. The defendant did not dispute foundation for those medical records. Hasn't the long tradition been that medical records contain both hearsay and non-hearsay, and a statement of an opinion of causation would be hearsay because it's not necessary. Causation is not necessary for treatment ordinarily. You'd have to, in order for it to be non-hearsay and come into the medical records exception, you'd have to establish that somehow the causation is necessary for diagnosis and treatment, right? Well, and I think the cases go both ways, but we've cited cases that say if it's causation based on his treatment, then it's not outside the treatment exception. Yeah, you'd have to lay the foundation that the ideology of the injury is directly related to the mechanism of the incident, right? Yes. It's still, now, is that causation evidence that would be excluded? Well... Would the doctor still testify about that as a basis for his diagnosis and treatment? Well, I think he can testify to it as a basis for his diagnosis and treatment and the underlying reason why the patient is there. Thank you. Very good. Thank you. Morning, Mr. Osborne. Morning, Your Honors. May it please the Court, Council. My name is Anthony Osborne. I represent the Appalachia Petco. While there were five issues presented on appeal, I think they really fall into two buckets. The first bucket being the issue of whether the trial court abused its discretion when it issued sanctions against the appellant, which consisted of the exclusion of the untimely causation opinions from the two doctors, although given the stipulation we're going to focus on Dr. Pesci today, since they've conceded as to Dr. Verma. And then, of course, the second bucket of two issues relate to the judgment motion. Turning to the sanctions order, as this Court is aware, we're dealing with an abusive discretion standard and the trial court's decision should not be reversed unless it was based on either an erroneous view of the law or a clearly erroneous assessment of the evidence. And to delve into the trial court's discretion and the exercise of that discretion, I think a very quick factual summary chronology is important. This lawsuit was filed in March of 2016. The appellant had until Halloween of 2016, October 31st, to designate experts. Discovery closed on February 17th of last year, 2017. In January of 2017, three months after the deadline for expert disclosures had passed, Petco's counsel did, didn't have to, but asked the appellant's counsel, you plan on having any experts? And the appellant's counsel responded to say he, quote, expected to have the treaters testify regarding various things, diagnosis, treatment, prognosis, et cetera. Never mentioned causation at that time. And then... Mr. Lundberg frames that, though, as should this sanction be appropriate just because I forgot to throw in the word causation? Well, he does. The issue, Your Honor, is this is why in 2000, December of 2010, Rule 26A was amended to address this exact issue of ambiguity in different courts in terms of what can treating physicians really talk about. Courts had trouble drawing a line between when a treater was testifying as a fact witness on treatment, et cetera, prognosis, versus when they were offering expert opinions on things like causation. And that's why the rule was changed in December 2012 to prevent this exact situation, to require disclosure of treating physicians if they're going to be used on experts on causation, even if they And it also bears noting, Your Honor, that in November 2016, Petco actually disclosed its own expert medical witness on causation, saying that the injuries at issue were in fact caused by things totally unrelated. Even after receiving that designation, the appellant still failed to designate an expert to respond to that. So Petco filed its summary judgment motion on March 17th last year. Three days later, we received some IME reports from Dr. Verma. Again, it sounds like we don't need to talk about him anymore. But the trial court exercised its discretion and excluded any causation opinions from Dr. Pesci because he hadn't been previously identified as an expert witness under 26A2C, and they certainly hadn't disclosed a summary of the facts and opinions on what she was going to testify, which is exactly what 26A2C requires. What about the plaintiff's argument that the discretion narrows if, in fact, the remedy that's imposed takes away the plaintiff's case? Thank you, Your Honor. Yes. That discretion should be narrowed. The discretion does narrow, and at that point, what the courts look at, Mr. Lumberg talked about willfulness and, let me look at my notes, bad faith. We're not suggesting there was willfulness or bad faith here, but what Mr. Lumberg didn't talk about is the third factor, which is fault. And if you look at this court's decision in the Laclede Gas case, fault is in there as well. It's very clear there was fault, both in the summary judgment ruling and in the trial court's ruling on the motion for reconsideration. Is fault inextricably intertwined with the concept of prejudice in the cases? I do not believe so, Your Honor. And so what would you say is the nature of the fault in this case? I think the nature is primarily the failure to comply with Rule 26A2C. At any time, at no point did Appellant's Counsel provide a designation that would comply with that rule. All we had was the doctor listed as a fact witness, somebody who had knowledge of events, and that was it. And that just simply doesn't meet the standard. Had he at least been listed as an expert witness, we would have gotten a little closer, but he wasn't designated, let alone did we have the facts and opinions, his opinions and the basis for them either. So that was really the problem, and when you look at the chronology I laid out, I think the fault heightens with each step of the way. We reached out to him even after the deadline had passed. He still didn't provide the information 26A2C requires. We served our own expert report in November of 2016, specifically saying there's no causal connection here between this accident. There are a myriad of other issues that cause this gentleman's to see, and there are multiple instances where that could have been corrected and it simply never was. So I take it your argument is that there are all sorts of caution signs that get thrown up in the course of the case. Mr. Vandenberg's Counsel never takes notice of it until after the summary judgment motion is made, and at that point it's too late, too close to trial, and the only appropriate sanction remedy is to strike the evidence, which we know will result in a case that can't go to trial. Yes, Your Honor, and I don't even think all those other warning signs were necessary. I think that the failure to comply was clear on its face, but the fact that there were all these additional opportunities, and the appellant never once went back to court and said, hey, I'm trying to get some IME reports. They filed a summary judgment motion. He never went back at any point in time and asked for any extension. So that's, I think, what heightens the fault. It was fault, and then it was fault again, and it was fault again. Do you think that it would not be an abuse of discretion for a judge to strike, essentially, a claimant's case nine months in front of the jury for a failure to disclose an expert? I think the court's decision would be subject to a little more scrutiny. I think the way the law is written, the judge would be within his rights, but I do think he would probably take a harder look at it. Is the district court required to consider lesser sanctions, and is there anything in the record indicating that the court did so here? Yes, when, yes, the court is required to consider lesser sanctions. The district court did do that. Among other things, the district court declined to award monetary sanctions to Petco, and, in addition, the court looked at whether we should push the trial date out and allow the trial court discuss the fact that if they were allowed to have these untimely designations, that Petco would need to depose these treaters. Petco may need a rebuttal expert, and the court exercised its discretion to control its calendar and said, I'm not going to continue this case. And I know appellant contends that, you know, maybe the case could have just been continued a couple months, and this could have all been corrected. Obviously, we all know that assumes a myriad of things, the availability of the lawyers, the availability of all the witnesses, the trial court's availability. So the court did evaluate all that and determined this is the sanction. But, you know, before the amendment to Rule 26, I'm old enough to have practiced law in that world, that I recall deposing experts two weeks before the trial because of just how the treating physician's going to offer this opinion. And it's, hold on, wait a minute. Then the court would tell you, well, take that deposition at the expense of the person who's made the late disclosure. And if you need an expert after that, then we'll try and figure out what we're supposed to do. So, I mean, in this case, we're talking about a months-long period of time. I mean, it doesn't strike me as an impossibility to say some lesser sanction might be appropriate. Why would I be wrong there? Well, the situations you're talking about, Your Honor, I don't know if those preceded the December 2010 amendments to 26. Absolutely. I mean, I haven't practiced law for 23 years. So my response to that, Your Honor, would be, number one, I think that's exactly why 26A was... I agree. But I'm saying here, if you look at the number of months, why wasn't a lesser sanction more appropriate? I think given the totality of the circumstances, as you know, Your Honor, the trial court has wide discretion. It narrows as the sanction becomes more severe, but there's still discretion there. And when you look at the time... That's why I wanted to outline the timeline for the court, because there are so many opportunities where something could have been done. And the court decided, you know what, I'm not going to potentially derail this trial that's been set for quite a while. I'm not going to allow it. You had opportunities. Had the court decided to allow it, it probably would be within the court's discretion. Don't you agree? Yes, I do. A couple other points I'd like to make. In terms of what the trial court did do, getting back to how it exercises discretion, I think it's very clear that the trial court went through a step-by-step analysis, as required under Wagner v. Johnson. The court looked at the reasons for noncompliance and found no valid excuse. Found there was no substantial justification and surprise and prejudice. We were a couple months from trial. Discovery deadline had passed. Expert designations had passed months ago. He was never designated as an expert. I think we can agree that the importance of the information is the one factor that did weigh in appellant's favor. I don't think there's any argument about that. The information at issue is obviously critical to their case. That was the only factor that the court found weighed in appellant's favor. The other factor under Wagner, of course, is the extent to which the information or testimony would have disrupted the order and efficiency of the trial. That's where you get into the need to depose the experts. Could all of that have been done? The court exercised its discretion and said, no, you know what? We're not doing that. Council talked about the Anderson case. One key distinction from the Anderson case from the Southern District of Iowa is that the plaintiff in that case did at least designate an expert. There was an expert designation that had the name of the doctor on there. In this case, it's different. There was never any expert disclosure of Dr. Pesci. But even in Anderson, the court concluded, you know, we're going to limit the testimony to personal observations, diagnoses, and treatments. So there still wasn't an opening of the door for causation. Appellant's counsel didn't argue it, but I think it's important to note that one of the arguments in their brief dealt with the issue of whether Petco had a duty to meet and confer. I just want to briefly address the fact that the sanctions were not under 37A of the Rules of Civil Procedure. Petco was not trying to compel any discoveries for which there could have been a meet and confer obligation. This was a 37C sanction, which is self-authenticating, as cited in the authorities in our brief. I just wanted to address that briefly. And in terms of their reliance on the Heartland case, that case was very distinguishable. That case dealt with a party showing up two weeks before trial with 27 documents and telling the court that they had 11 witnesses that were going to talk about those documents. And in that case, the court only looked at four of the documents and said, you know what, three of these should have been produced, and this is unfair and misleading, so all of it's out. And all the appellate court said, remanded it and said, you know, you need to look at all 27, you can't just do that. That's obviously a markedly different situation than what we have here. And the last thing I want to address in terms of the summary judgment motion, Mr. Lumberg, Appellant's Counsel, talked about all the reasonable inferences that should have been drawn from the medical records that were in the record. Just to address that briefly, obviously, without an expert designation, the court was within its right to do what it did under 37C due to the noncompliance with 26A2C. But to talk about reasonable inferences and to suggest that a doctor should reasonably infer that, you know, it's not reasonable to infer the treater did anything other than listen to the patient and write down what the patient said. The patient could have just as easily fallen off a ladder or fallen off his roof or, you know, had some other injury. It's not reasonable to think that the doctor did anything other than accept the patient's rendition of events, which is what they commonly do to treat and diagnose their patients. So in summary, Petco requested that the court affirm both the trial court's decision to summary judgment for Petco. Thank you. Your Honors, the Hartland case Mr. Osborne just noted had an egregious set of facts. Two weeks before trial, 27 documents and 11 people to testify show up. Even then, this Hartland, though, involved non-expert witnesses, did it not? Well, I think these were technical documents. You know, it was a bank case. It didn't involve expert designation, though. I would agree, but it involved a whole host of... Isn't Brooks more on point? Yes, and in Brooks, the complaint and the medical records of that plaintiff, neither of those pointed to any specific incident as a cause of that man's injuries. There was nothing. Plus, he was given additional time to designate an expert and did not. And that was the consequence, you know, as a consequence of dismissal. I think they all turn on their own facts. And the consideration of a lesser sentence, a lesser sanction here, surprise or prejudice to Petco. Judge Pratt said in the Southern District, well, when you're talking about treating physicians, surprise and prejudice is limited at best. With regard to the court's docket here, the ruling dismissing this case was two months before the scheduled trial date. My letter to the Defendant's Counsel saying the treating physicians are going to testify to all these other things was in January, five months before the trial date. Petco could have said, well, we need to take his deposition. There was still a month left in the discovery time period. They chose to stand mute and let the time run and then attack with a motion for summary judgment, motion for sanctions. If this is a technical violation of Rule 26, the issue still remains under Rule 37C, was that omission harmless given all the disclosures that were made? We would ask that the court remand this to the District Court for consideration of whether any sanction needs to be imposed and if so, what lesser sanction other than dismissal. Thank you. Very well. Counsel, thank you for the briefing and the argument today. The case will be submitted and decided in due course.